# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CANADIAN AMERICAN                        )
ASSOCIATION OF PROFESSIONAL              )
BASEBALL, LTD.,                          )
                                         )
    Petitioner,      )
                                         )
    v.               )    **MEMORANDUM OPINION**
                                         )    **AND RECOMMENDATION**
OTTAWA RAPIDZ, Former Member of          )
Canadian American Association of         )    1:09CV93
Professional Baseball, Ltd., ROB HALL,   )
Former Director of Ottawa Rapidz,        )
SHELAGH O'CONNER, Former                 )
Alternate Director of Ottawa Rapidz,     )
and OTTAWA PROFESSIONAL                  )
BASEBALL, INC., as Lessee of the         )
Ottawa Rapidz,                           )
                                         )
    Respondents.     )

       This matter is before the court on motions to remand by Petitioner Canadian American Association of Professional Baseball (docket no. 9) and Respondent Ottawa Professional Baseball, Inc. ("OPBI") (docket no. 12). Also pending before the court are a motion to dismiss by Respondents Hall and O'Connor (docket no. 13) and motion to dismiss by Respondent Ottawa Rapidz (docket no. 15). Since there has been no consent to the jurisdiction of the magistrate judge, this court must deal with the motions by way of a recommended disposition. For the reasons discussed herein, it will be recommended that the motions to remand be granted. Furthermore, it will be recommended that the court require Respondents Ottawa Rapidz, Rob Hall,

and Shelagh O'Connor ("Noticing Respondents") to pay Petitioner's costs and expenses incurred in bringing the motion to remand. If the court remands to state court, this court will no longer have jurisdiction to address the pending motions to dismiss.

## ALLEGED FACTS

This case was begun when, on or about December 18, 2008, Petitioner filed a "Motion to Confirm Arbitration Award and for Order Directing Entry of Judgment" against Respondents in the Forsyth County Superior Court. The motion asserts that on September 29, 2008, Petitioner's board of directors ("board"), serving as an arbitration panel pursuant to Petitioner's league agreements, "(1) denied the [Ottawa Rapidz's] request for a Voluntary Withdrawal from the League on the basis of financial hardship, (2) affirmed that the [Ottawa Rapidz] violated the Affiliation Agreement and the Bylaws by failing to field a team for play in the 2009 season, thereby automatically and immediately terminating the membership of the [Ottawa Rapidz] in the League, (3) affirmed the right of the League to draw down in full the [Ottawa Rapidz's] $200,000 CDN Letter of Credit, (4) confirmed that the Member and its Related Entities (as defined in the Bylaws) shall not participate in any way in the play of professional baseball in the home territories of the other teams in the League for the 2009 season, and (5) confirmed the League, at its sole option, could cause the lease of the stadium of the [Ottawa Rapidz] to be assigned to the League." (docket no. 2).

The motion further asserts that Petitioner is a North Carolina Corporation with its registered office in Forsyth County, North Carolina; that Ottawa Rapidz is a former member and holder of a membership in the Petitioner's baseball league ("league"); that Rob Hall was the appointed Director and sole representative of the Ottawa Rapidz with the Petitioner's baseball league; that Shelagh O'Connor was appointed Alternate Director of the Ottawa Rapidz; and that OPBI was the "Controlling Related Entity," as defined in the Petitioner's bylaws, and was the lessee of the membership before its termination by the Petitioner's arbitration panel. *Id.*

On January 5, 2009, Respondents Ottawa Rapidz and Rob Hall were served with Petitioner's motion (docket no. 1). On January 21, 2009, Respondent Shelagh O'Connor was served with Petitioner's motion. *Id.* On February 4, 2009, Noticing Respondents filed a Notice of Removal with this court stating that the action is removable pursuant to 28 U.S.C. §§ 1332(a)(2), 1441, and 1446. *Id.* The notice alleges that "Respondent Ottawa Professional Baseball Inc. ('OPBI') is not a proper party to this action and has been fraudulently joined for purposes of defeating the unanimity requirement necessary for removal." *Id.* Specifically, Noticing Respondents allege that the aforementioned award of the arbitration panel ("arbitration award") was entered against Ottawa Rapidz alone; therefore, there is no possible cause of action against OPBI in state court. *Id.* Alternatively, Noticing Respondents allege that the interests of the Petitioner and OPBI, "an entity under the majority control of [the Petitioner's] Commissioner," are aligned and adverse to

-3-

Noticing Respondents. *Id.* They argue that subject to realignment of OPBI, this court may retain jurisdiction of this matter. *Id.*

On March 4, 2009, Petitioner filed a motion for remand to Forsyth County Superior Court on the grounds that the case had been improperly removed because OPBI had not consented to removal, thus violating the "rule of unanimity" for diversity of citizenship jurisdiction (docket no. 9). Petitioner also requested costs and expenses incurred in bringing the motion to remand. *Id.* On March 5, 2009, Respondent OPBI filed a motion for remand on the grounds that it did not consent to removal and that it is an adverse party to Petitioner given the loss of its leased membership rights in Petitioner's baseball league (docket no. 12).

## DISCUSSION

Petitioner moves to remand on the basis that not all Respondents have consented to removal. When a party moves for remand, "[t]he burden is on the party seeking to preserve the removal, not the party moving for remand, to show that the requirements for removal have been met." 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3739, at 574 (1985 & Supp. 1995). Moreover, federal courts must construe removal statutes strictly and resolve all doubts about the propriety of removal in favor of retained state court jurisdiction. *Mason v. Int'l Bus. Machs., Inc.*, 543 F. Supp. 444, 445 & n.3 (M.D.N.C. 1982) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)).

-4-

Ordinarily to effect removal, all properly joined defendants must join in the removal under the judicially created "rule of unanimity." *Parker v. Johnny Tart Enters., Inc.*, 104 F. Supp. 2d 581, 583-84 (M.D.N.C. 1999). The "rule of unanimity" does not require all defendants to sign the notice of removal; however, it does require that each defendant officially and unambiguously consent to the notice of removal. *Id.* The requirement that all defendants must join in the removal has three exceptions. A defendant need not join if: (1) it had not been served with process at the time the removal petition was filed; (2) it is merely a nominal or formal party defendant; or (3) the removed claim is separate and independent of one or more nonremovable claims against the nonjoining defendants. *Creekmore v. Food Lion, Inc.*, 797 F. Supp. 505, 508 n.4 (E.D. Va. 1992) (citing *Mason v. Int'l Bus. Machs., Inc.*, 543 F. Supp. at 446 n.1)).

Presumably, Noticing Respondents' argument is that the second exception applies in this case. Unfortunately, their filings blend an analysis of fraudulent joinder with language associated with a nominal party exception to unanimity. In fact, there is no argument that a nominal party exception to unanimity applies within the notice of removal (docket no. 1). Instead, there is a focus on fraudulent joinder, and an alternative argument regarding realignment. *Id.* Specifically, it is alleged that OPBI has been "fraudulently joined as a respondent in this action," because "'there is no possibility that the [petitioner] would be able to establish a cause of action against [OPBI] in state court.'" *Id.*

-5-

Fraudulent joinder is only applicable "where an 'in-state,' or nondiverse, defendant has been joined in order to manipulate jurisdiction." *Crockett ex rel. Carter v. General Motors Corp.*, Civil Action No. 3:08cv469, 2008 WL 5234702, at *4 (E.D. Va. Dec. 15, 2008). "To prove fraudulent joinder, 'the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the *in-state* defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'" *Id.* (quoting *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999)). Here, there is no argument that OPBI is an in-state or non-diverse respondent for diversity jurisdiction purposes.

OPBI's status as a "nominal party" is not explored independently in the notice of removal (docket no. 1) or Noticing Respondents' Memorandum of Law in Opposition to Motions to Remand (docket no. 18). Rather, any reference to OPBI as a nominal party is used to develop a fraudulent joinder argument regarding the Petitioner's alleged inability to establish a cause of action or finding of liability against OPBI.

By focusing on fraudulent joinder, Noticing Respondents subject themselves to a standard that "'is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss[.]'" *W. Va. ex rel. v. McGraw v. Minn. Mining & Mfg. Co.*, 354 F. Supp. 2d 660, 666 (S.D. W. Va. 2005) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). "As the decision in *Hartley* illustrates, fraudulent

-6-

joinder claims are subject to a rather black-and-white analysis in [the Fourth Circuit]. Any shades of gray are resolved in favor of remand. At bottom, a plaintiff need only demonstrate a 'glimmer of hope' in order to have his claims remanded . . . ." *Id.*

The narrow application of the fraudulent joinder exception is a crucial distinction between it and the nominal party exception to unanimity. The Noticing Respondents parties have not, however, recognized this distinction in their filings to this court. Nevertheless, I will consider whether the nominal party exception is warranted here, given the Noticing Respondents' focus on the lack of a "cause of action" against OPBI.

"The nominal party exception to the rule of unanimity is that 'nominal or formal parties, being neither necessary nor indispensable, are not required to join in the notice [of removal].'" *Crockett ex rel. Carter*, 2008 WL 5234702, at *4 (quoting 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 107.11[1][d] (3d ed. 1999)). The determination of "[w]hether a defendant is a nominal party depends on the facts of each case." *Id.* (internal quotations omitted).

The Fourth Circuit has yet to address the nominal party exception to the rule of unanimity. This court, however, has noted a "broad consensus concerning the type of situations which would be covered by the exception," observing that these situations:

> include whether the defendant is a defunct corporation without assets or corporations joined solely on account of the parent-subsidiary relationship. A nominal party can encompass defendants who are mere stakeholders or depositories for property. Another situation

-7-

involves cases where there is no likely possibility that a plaintiff can establish a cause of action against a defendant. This situation can include one where the party was not involved in the activities charged in the complaint, have already settled with the plaintiff, have only been named as John Doe Defendants, or where there is no basis for imputing liability. One test a court can consult in determining whether a party should be denominated as nominal is whether the court would be able to enter a final judgment in favor of the plaintiff in the absence of the defendant, without otherwise materially circumscribing the relief due.

*Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 696 (M.D.N.C. 2007) (citations omitted).

Here, Noticing Respondents argue that "there is no possibility . . . that the [petitioner] would be able to establish a cause of action against OPBI" (docket no. 1). Specifically, in the notice of removal they argue that a cause of action cannot be established because "the only adverse party to the [Petitioner's action] is [Ottawa] Rapidz, as [Ottawa] Rapidz is the only party against whom the 'arbitration award' was issued." *Id.*

Noticing Respondents rely on the absence of any reference to OPBI in the Petitioner's "arbitration award" letter and the lack of participation by OPBI in the "arbitration" hearing to infer that the arbitration award does not affect OPBI (docket no. 18). Moreover, they argue that OPBI has no stake in this matter because the letter of credit that is subject to the arbitration award "was posted by Rapidz Baseball [Club, Inc.] on the credit of Momentous, and not by OPBI." *Id.* Last of all, "under the Letter Agreement, OPBI assigned all of its transferable assets, and delegated all

-8-

management rights associated with its membership in the League, to Rapidz Baseball [Club, Inc.]." *Id.*

Despite Noticing Respondents' arguments, several factors indicate that a cause of action may be established against OPBI. First, OPBI retained a property interest in the Ottawa Rapidz despite Noticing Respondents' claims regarding assignment of all transferable assets and management rights to Rapidz Baseball Club, Inc. Specifically, the membership was acquired by Inside the Park, LLC on December 6, 2007, with a right to lease the membership for a two-year term (docket no. 20, ex. 4, p.1). OPBI began negotiations for a lease from Inside the Park, LLC on April 10, 2008. *Id.* Various filings to this court identify OPBI as the lessee of the membership and Rapidz Baseball Club, Inc. as the membership manager. For example, the Letter Agreement (docket no. 18, ex. 1) shows that OPBI sold, transferred, assigned, and conveyed all its right, title, and interest in and to its assets, property, and undertaking to Rapidz Baseball Club, Inc. as manager. *Id.* at 1-2. Nevertheless, the Ottawa membership itself was specifically excluded from the transfer. *Id.* at 3. Instead of transferring the lease directly to Rapidz Baseball Club, Inc., Rapidz Sports and Entertainment, Inc.[1] became a forty-nine percent owner of OPBI (docket no. 20, ex. 4, p. 16). It appears that the deal was structured in this

_____

[1] Rapidz Sports and Entertainment, Inc. is the owner of Rapidz Baseball Club, Inc. (docket no. 1., ex. 1, p. 1). In turn, Rapidz Sports and Entertainment, Inc. is owned by Momentous.ca Corporation. *Id.* Respondent-Hall serves as a director and officer of Momentous.ca Corporation and Rapidz Sports and Entertainment, Inc. *Id.*

-9-

fashion to avoid the "change of ownership clause in the stadium lease OPBI had with the City of Ottawa" (docket no. 20).

Second, with knowledge that OPBI retained the membership lease, Rapidz Baseball Club, Inc. voluntarily agreed to post the letter of credit that is subject to the arbitration award (docket no. 18, ex. 1, p. 2; docket 20, ex. 4, p. 4). A letter of credit is a requirement for participation in the Petitioner's baseball league. Specifically, the League's Bylaws required that "[t]he Controlling Related Entity shall demonstrate financial ability and the ability to produce a Two Hundred Thousand Dollar ($200,000) Letter of Credit to be maintained for the benefit of the League." (docket no. 14, ex. 3, p. 3).

The term "Controlling Related Entity" has a specific meaning within the League's Bylaws and provides insight into OPBI's position in this matter. The Bylaws define a "related entity" as any "ownership entity which owns, holds, controls, or manages an interest in an owner of a member." *Id.* A "controlling interest" is defined as "the ownership or voting control by any related entity that can determine the affairs of a member solely by its vote." *Id.* at 8. Moreover, "a controlling interest in a member may not be sold, assigned, optioned or otherwise transferred [w/out approval of the League's Board]." *Id.* at 6. Therefore, Rapidz Baseball Club, Inc. volunteered the letter of credit with knowledge that OPBI was acting as the "Controlling Related Entity" of the Ottawa Rapidz under the provisions of the Letter Agreement, Application for Approval of the Lease, and the League Affiliation Agreement, all of which Rapidz Baseball Club, Inc. are signatories to.

-10-

In fact, this arrangement was specifically structured to ensure that OPBI would retain ownership of the lease and its position as "Controlling Related Entity." Noticing Respondents may feel that the arrangement is unfair in hindsight, but their voluntary agreement to post the letter of credit for the membership subject to these terms does not show that OPBI is a nominal party; rather, it confirms OPBI's position as a necessary party in this proceeding.

Third, Rapidz Baseball Club, Inc., as manager, and OPBI, as lessee of the membership, agreed to "be bound by and comply with all of the league agreements" (docket no. 2, ex. 2, p. 2). Furthermore, each contracting party agreed "that each member's continuation of its baseball operations and commitments to every other member is essential and material to every other member's continued business operation . . . [thus] any withdrawal would be materially harmful to the league." [id.]. Consequently, voluntary withdrawal from the League could only occur through compliance with the terms of the League's Bylaws. *Id.* at 2-3.

Ottawa Rapidz requested voluntary withdrawal at the League's board meeting on September 29, 2008. The board, however, denied voluntary withdrawal (docket no. 9, ex. 2, p. 3). Given that Rob Hall, as Ottawa Rapidz Director, had informed the League, in a letter dated September 19, 2008, that the Ottawa Rapidz would not play in the 2009 season, the board proceeded with automatic termination of membership rights under Article 2.9 A. 3. of the League Bylaws. *Id.* at 1-4. Given that there was "no evidence that the Ottawa Rapidz would fulfill its Affiliation Agreement and play in the 2009 Season," the Board terminated the membership. *Id.* at 4.

-11-

Upon termination of a membership, "the Member is thereupon stripped of all of its rights and privileges as a Member in the League, including without limitation, all rights to any distribution from the League, any status in the League, and the loss of all territorial rights previously granted the Member and the Member's Letter of Credit." (docket no. 14, exh. 3, p.13). It is the termination of the OPBI's leased membership that triggers Petitioner's draw upon the letter of credit posted by Rapidz Baseball Club, Inc.

Finally, the absence of any reference to OPBI in the Petitioner's "arbitration award" letter and the lack of participation by OPBI in the "arbitration" hearing has no bearing on OPBI's status as a nominal party. Specifically, the League Bylaws clearly state that "league communication with each Director shall be deemed as communication with the respective Member, Related Entities, employees, agents, and players regarding interests which involve the Member or others." *Id.* at 23. Therefore, OPBI's status as a Related Entity of the Membership ensures that communication addressed to the Director of the Ottawa Rapidz is sufficient communication for OPBI.

Moreover, Rob Hall's position as Director of the Ottawa Rapidz was only possible because of his ownership interest in the Member. *Id.* In this case, the "ownership interest" was in the lease retained by OPBI, a corporation in which Rapidz Sports and Entertainment, Inc. owns a 49 percent interest. In turn, Rapidz Sports and Entertainment, Inc. is owned by Momentous.ca Corporation, a company that is controlled by Rob Hall.

-12-

Given that a viable cause of action exists against OPBI, it is not a nominal party for purposes of finding an exception to unanimity, nor is it fraudulently joined. As an alternative argument, Noticing Respondents argue that OPBI should be realigned as a petitioner given Miles Wolff's position as Commissioner of the Petitioner's League, his ownership of a League membership, and his 51 percent ownership interest in OPBI (docket no. 1). In effect, their argument is that by resisting removal and supporting the arbitration award, Miles Wolff, through control of OPBI, is not acting as a disinterested party.

Corporate governance issues aside, the parties specifically contracted for terms that would allow for a conflict of interest to develop. Rapidz Baseball Club, Inc. contracted for OPBI to retain an ownership interest in the membership lease and for Miles Wolff to retain a 51 percent ownership interest in OPBI. Moreover, the Application for Approval of Lease provides a waiver for Miles Wolff's conflicts of interest (docket no. 20, ex. 4, p. 5).

An analysis of the case law regarding realignment shows that the Fourth Circuit recognizes the "principal purpose" test regarding realignment of parties. *Ohio Cas. Ins. Co. v. RLI Ins. Co.*, No. 1:04CV483, 2005 WL 2574150, at *4 (M.D.N.C. Oct. 12, 2005) (quoting *U.S. Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir. 1995)). "Application of the principal purpose test entails two steps. First, the court must determine the primary issue in the controversy. Next, the court should align the parties according to their positions with respect to the primary issue." *Id.* Noticing Respondents identify the primary issue as "whether the Court should

'confirm' a purported 'arbitration award' regarding the termination of the Rapidz's membership that permitted the League to draw down on the $200,000 Letter of Credit posted by Rapidz Baseball." (docket no. 18). This statement, however, merely reaffirms OPBI's position as a respondent in this case. OPBI is a necessary party because of its *ownership* of the membership lease which was terminated *thereby allowing* Petitioner to draw upon the letter of credit.

Finally, underlying these concerns is a more fundamental issue regarding realignment in this context. Although realigning parties to reflect their true interests in a case that is originally filed in federal court is required, "[i]t is not clear whether a federal court may create diversity jurisdiction by realigning the parties . . . in a case that has been removed to federal court." 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 102.21 (3d ed. 2009). In sum, Noticing Respondents have not provided a sufficient basis for justifying removal of this case because of diversity jurisdiction; therefore, it will be recommended that the court remand this case to state court.

Petitioner's Request for Costs and Expenses

Petitioner has moved for payment of costs and expenses expended in conjunction with the removal proceedings. Section 1447(c) of Title 28, United States Code, states: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (2006). Pursuant to the plain language of section 1447(c), such an award is within the discretion of the court. *See In re Lowe*, 102 F.3d 731, 733 n.2

(4th Cir. 1996). Moreover, the United States Supreme Court has stated that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, the notice of removal does not acknowledge that the fraudulent joinder exception to unanimity is only applicable "where an 'in-state,' or nondiverse, defendant has been joined in order to manipulate jurisdiction." *Crockett ex rel. Carter*, 2008 WL 5234702, at *4. It is clear that there is no in-state or non-diverse respondent in this case; therefore, it is not even possible that this exception could apply in this context. Worse still is Noticing Respondents' incomplete citation to case law that would have revealed this distinction (docket no. 18).

Furthermore, it is not objectively reasonable to argue for realignment after removal when the parties themselves created the context for the alleged conflict of interest to develop–a conflict of interest that was waived by the contracting parties. Moreover, given the League's Bylaws, it is clearly necessary for the membership leased by OPBI to be terminated in order to reach the letter of credit that the Noticing Respondents seek to protect. In requesting realignment, Noticing Respondents fail to acknowledge that the arguments they present for realignment arose due to contractual agreements that were voluntarily entered into by Petitioner, OPBI, and Rapidz Baseball Club, Inc. at the time the Ottawa Rapidz membership was leased from Inside the Park, LLC.

-15-

In attempting to avoid the rule of unanimity, Noticing Respondents have incorrectly applied the case law regarding removal and realignment. I find that because Noticing Respondents did not assert an objectively reasonable basis for removal, Noticing Respondents should be required to pay Petitioner's costs and expenses in bringing the motion to remand.

**CONCLUSION**

Based on the foregoing, **IT IS RECOMMENDED** that Petitioner's motion for remand (docket no. 9) and Respondent OPBI's motion for remand (docket no. 12) be **GRANTED**, that Petitioner's motion for costs and expenses be **GRANTED**,[2] and that this case be **REMANDED** to Forsyth County Superior Court. Furthermore, if the court adopts this recommendation and remands to state court, the court will no longer retain jurisdiction to address the motion to dismiss filed by Respondents Hall and O'Connor (docket no. 13) and the motion to dismiss filed by Respondent Ottawa Rapidz (docket no. 15).

_____

WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
June 11, 2009

_____

[2] Of course, any action on fees must await the district court's decision on this Recommendation.