IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CANADIAN AMERICAN                        )
ASSOCATION OF PROFESSIONAL               )
BASEBALL, LTD.,                          )
                                         )
          Petitioner,                    )
                                         )
          v.                             )
                                         )
OTTAWA RAPIDZ, Former Member of          )
Canadian American Association of         )      1:09-cv-00093
Professional Baseball, Ltd., ROB HALL,   )
Former Director of Ottawa Rapidz,        )
SHELAGH O'CONNOR, Former                 )
Alternate Director of Ottawa Rapidz,     )
and OTTAWA PROFESSIONAL                   )
BASEBALL, INC., as Lessee of the         )
Ottawa Rapidz,                           )
                                         )
          Respondents.                   )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

       The Report and Recommendation of the United States
Magistrate Judge ("Recommendation") was filed with the court in
accordance with 28 U.S.C. § 636(b) and, on June 11, 2009, was
served on the parties in this action.  Within the time limits
prescribed by § 636, Respondents Ottawa Rapidz ("Ottawa
Rapidz"), Rob Hall, and Shelagh O'Connor (collectively the
"Removing Respondents") filed objections.  (Doc. 23.)
Petitioner Canadian American Association of Professional
Baseball, Ltd., ("the League") filed a response to the

objections (Doc. 25), and the Removing Respondents filed a reply (Doc. 29). All objections are now ripe for disposition.

## I. BACKGROUND

This action began on December 18, 2008, with the League's filing of a "Motion to Confirm Arbitration Award and for Order Directing Entry of Judgment" against all Respondents in the General Court of Justice, Superior Court Division, of Forsyth County, North Carolina. (Doc. 1, Ex. B.) The motion asserts that on September 29, 2008, the League's board of directors (serving as an arbitration panel pursuant to agreements between the parties)[1] denied the request of Respondent Ottawa Rapidz to voluntarily withdraw from the League and instead terminated the rights of Respondent Ottawa Professional Baseball, Inc., ("OPBI") in its lease of League membership to operate the Respondent Ottawa Rapidz, a baseball team (the "lease" or "lease agreement"), on the grounds it failed to field a team for the 2009 season. (Id.) The board also affirmed the League's right to draw down in full on a $200,000 letter of credit posted on OPBI's behalf. (Id.)

The League is alleged to be a North Carolina corporation, Ottawa Rapidz a former member of the League, Rob Hall and Shelagh O'Connor Director and Alternate Director, respectively,

---

[1] The Removing Respondents dispute whether the proceeding constituted an "arbitration." The court adopts that phrase solely for ease of reference and not as any decision on the merits.

of the Ottawa Rapidz, and OPBI the lessee of the membership in the League before it was terminated by the arbitration. (Id.) All Respondents are citizens of a foreign state, and the dispute involves more than $75,000. (Id.)

On February 4, 2009, the Removing Respondents removed the case to this court on grounds of diversity jurisdiction; Respondent OPBI did not consent. The notice of removal argues that OPBI's consent is not required because it was "fraudulently joined for purposes of defeating the unanimity requirement necessary for removal to federal court in multi-defendant actions." (Doc. 1.) Both Petitioner and OPBI moved to remand, arguing, among other things, that OPBI is not fraudulently joined because it is *diverse* and is a party against whom the possibility of a claim exists, thus making its consent to removal - which it did not grant – necessary under 28 U.S.C. § 1446(a). (Docs. 9, 12.)

The Recommendation advises granting the motion to remand and awarding just costs and expenses, including attorneys' fees, on the grounds that removal lacked an objectively reasonable basis. The Removing Respondents object to both the granting of the motion to remand and the awarding of just cost and expenses.

3

## II.  ANALYSIS

### A.  Basis for Removal

The Removing Respondents' arguments raised in their objections in favor of disregarding the requirement of unanimous consent for removal can be grouped into three basic contentions: first, that OPBI is a nominal party and its consent is not required; second, that OPBI, although diverse, was fraudulently joined and therefore its consent is not required; and third, that OPBI shares the League's interest in the litigation and should be realigned as a petitioner, also negating the necessity of its consent.  Each is discussed in turn.

Because the matter has come to the court by way of Recommendation, the court will conduct a *de novo* review.  28 U.S.C. § 636(b)(1); see Insteel Wire Products, Co. v. Dywidag Systems Int'l USA, Inc., No. 1:07cv641, 2009 WL 2253198 (M.D.N.C. July 28, 2009).[2]  The Removing Respondents, who seek to

---

[2]  The Removing Respondents argue that the court is bound to review the Recommendation by the more deferential standard of "clearly erroneous or contrary to law" found in 28 U.S.C. § 636(b)(1)(A) because a motion to remand is regarded by most courts as non-dispositive. (Doc. 24 at 4-6.)  There appears to be conflicting case law on whether a Magistrate Judge may enter orders allowing motions to remand or should instead enter only recommended decisions.  See, e.g., Jonas v. Unisun Ins. Co., No. 00-1217, 2000 WL 1350648, at *1 (4th Cir. Sept. 20, 2000) (noting that the Fourth Circuit "has not addressed whether a magistrate judge may issue an order of remand (as opposed to issuing a report and recommendation for the district court's review)").  The issue of whether or not an order to remand is dispositive need not be resolved here, because instead of issuing an order the Magistrate Judge issued a Recommendation.  Therefore, the *de novo* standard of review is appropriate.  Insteel, 2009 WL 2253198, at *1 n.1; cf.

preserve removal, bear the burden of establishing that the requirements for removal have been met. <u>Blue Mako, Inc. v. Minidis</u>, 472 F. Supp. 2d 690, 696 (M.D.N.C. 2007). They do so understanding that removal statutes, being in derogation of state sovereignty, are strictly construed, <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09 (1941), and all doubts will be resolved in favor of remand to state court, <u>Dixon v. Coburg Diary, Inc.</u>, 369 F.3d 811, 816 (4th Cir. 2004) (internal citations omitted).

### 1. Nominal Party Exception

The "rule of unanimity" is a judicial interpretation of 28 U.S.C. § 1446(a) that requires all defendants in a state court action to consent to its removal to federal court. <u>Brodar v. McKinney</u>, 378 F. Supp. 2d 634, 636 (M.D.N.C. 2005). Under the "nominal party exception" to the rule of unanimity, "nominal or formal parties, being neither necessary nor indispensible, are not required to join in the notice [of removal]."[3] 16 James Wm.

---

<u>Wachovia Bank, N.A. v. Deutsche Bank Trust Co. Americas</u>, 397 F. Supp. 2d 698, 702 (W.D.N.C. 2005) (conducting extensive analysis of why a *de novo* standard of review is inapplicable to review of an *order* to remand entered by a Magistrate Judge).

[3] This court has previously noted three exceptions recognized in this circuit to the requirement that all defendants must consent to a removal. "A defendant need not join or consent to the notice of removal if: (1) the non-joining defendant has not been served with process at the time the notice of removal is filed; (2) the non-joining defendant is merely a nominal or formal party; or (3) the removed claim is independent of one or more non-removable claims

Moore et al., Moore's Federal Practice § 107.11[1][d] (3d ed. 2009) (citing cases); see Mason v. Int'l Bus. Machs., Inc., 543 F. Supp. 444, 446 n.1 (M.D.N.C. 1982). The Fourth Circuit has not directly addressed the nominal party exception to the rule of unanimity. However, one court in this district has analyzed the application of the nominal party exception in a diversity case where a non-consenting defendant was diverse, as here. Blue Mako noted a number of situations where a defendant may be nominal including, among other circumstances, where "there is no possibility the plaintiff can establish a cause of action against a [non-consenting] defendant." 472 F. Supp. 2d at 696.

Applying this standard, as the Magistrate Judge correctly concluded, OPBI is not a nominal party. The very purpose of the arbitration was to cancel the membership lease in the League that OPBI held to permit the Ottawa Rapidz baseball team to operate.[4] By seeking to enforce the arbitration award and

_____

against the non-joining defendant." Parker v. Johnny Tart Enter., Inc., 104 F. Supp. 2d 581, 584 n.3 (M.D.N.C. 1999).

[4] OPBI purchased the lease from Inside the Park, LLC, which controlled all memberships for the League. (Doc. 20, Ex. 4.) Before the Magistrate Judge, the Removing Respondents argued that OPBI "assigned all of its transferable assets" to a related entity (Rapidz Sports Club, LLC, ("Rapidz Club")), suggesting that OPBI has no stake in the membership lease. (Doc. 18 at 9.) They pointed further to the fact that OPBI was not named specifically in the arbitration award as evidence that it is a nominal party. (Id. at 8-9.) These arguments ignored the true substance of the parties' relationships, however. As the Magistrate Judge noted extensively, the parties structured their relationships to permit Rapidz Club to post (as security for OPBI's obligation) the $200,000 letter of credit to the League. This permitted OPBI to retain ownership of the membership lease, which was

6

deprive OPBI of its interest in the membership lease, the League can establish a cause of action against OPBI; indeed, termination of the lease is a condition precedent to the League's entitlement to draw down on a $200,000 letter of credit posted on OPBI's behalf. (Doc. 14, Ex. 3.) The Removing Respondents acknowledged as much before the Magistrate Judge. (Doc. 18 at 11.) Consequently, because OPBI is not a nominal party, this exception does not apply.

### 2. Fraudulent Joinder Exception

The Removing Respondents argue next that OPBI's consent should not be required because OPBI was fraudulently joined to defeat unanimity. Traditional "fraudulent joinder" analysis in a case where federal jurisdiction is based on diversity of the parties involves an attempt to attack the naming of a *non-diverse* defendant who allegedly was included solely to defeat the remaining defendants' right to a federal forum. See Crockett v. Gen. Motors Corp., No. 3:08CV469, 2008 WL 5234702,

---

required by OPBI's stadium lease with the City of Ottawa. Thus, Removing Respondents failed to acknowledge that the membership lease -- the critical subject of this dispute – either was not a "transferable asset" or, in spite of being so, was not transferred and thus remained with OPBI. (Doc. 18, Ex. 1.)

Moreover, the League Bylaws clearly provide that notice to the Ottawa Rapidz's Director (Hall) of the arbitration proceeding constitutes notice to OPBI. (Doc. 14, Ex. 3 at 23 (providing that "league communication with any Director shall be deemed as communication with the respective Member, Related Entities, employees, agents and players regarding interests which involve the Member or others").) As the "Controlling Related Entity," OPBI was on notice of any communication directed to Hall. There is no dispute that Hall received such notice and appeared at the arbitration.

at *4 (E.D. Va. Dec. 15, 2008). To prove such fraudulent joinder, "the removing party must establish either: [t]hat there is *no possibility* that a plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (internal quotation omitted).

Here the Removing Respondents seek to apply a "fraudulent joinder" exception in order to avoid the unanimity requirement, even though OPBI is admittedly diverse under 28 U.S.C. § 1332(a)(2). (Doc. 1.) In so doing, the Removing Respondents argue that where there is evidence of collusion between a plaintiff and a defendant, the defendant can be disregarded for purposes of the unanimity requirement.[5] (Doc. 24 at 6-16.)

A collusion exception to the rule of unanimity in a diversity case does not appear to have been addressed in this circuit. Collusion has been recognized in other circuits as an exception in cases where federal jurisdiction is predicated on the presence of a federal question. See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 109, 119 (D. Mass. 2006). This may be because unlike in a diversity case

---

[5] It is plain that the Removing Respondents cannot meet the traditional "fraudulent joinder" test. As noted earlier, OPBI is not an in-state respondent, and the League nevertheless has the possibility of a claim against it. There is also no showing of outright fraud in the League's pleading of *jurisdictional* facts against OPBI.

where the mere act of joining a non-diverse defendant (something over which a plaintiff generally has control) is sufficient to avoid the federal forum, in a federal question case a plaintiff has less control over the defendants and the impediment to removal becomes lack of consent. This application of fraudulent joinder in federal question cases requires "clear and convincing evidence" that the "plaintiff has no real good faith intention to prosecute the non-consenting defendant or seek a joint judgment." Diaz v. Kaplan Univ., 567 F. Supp. 2d 1394, 1403 (S.D. Fla. 2008) (internal citations omitted). Under this articulation of the test, it cannot be said that there is clear and convincing evidence that the League has no good faith intention of seeking a joint judgment against OPBI, because, as noted, termination of OPBI's lease in the League is required before the League can draw down on the letter of credit posted on its behalf as a condition of the lease.

The Removing Respondents cite one case, Hauck v. Borg Warner Corp., No. 6:04CV1835, 2006 WL 2927559 (M.D. Fla. Oct. 12, 2006), for the proposition that a fraudulent joinder exception can apply to a diverse but non-consenting defendant who allegedly colludes with a plaintiff to defeat unanimity.[6] In

---

[6] Though the Removing Respondents represent that "[n]umerous other courts have applied the fraudulent joinder doctrine, or the analogous nominal party doctrine, to federal question cases or cases where diversity is not an issue," only Hauck supports application of the doctrine in any form (apart from the related "nominal party

<u>Hauck</u>, the defendants argued that a diverse defendant that refused to consent to removal, Steel Grip, Inc. (hereinafter "Steel Grip"), was collusively added to an asbestos product liability action solely to prevent the remaining defendants from removing the case. The court recognized that "where a diverse or out-of-state defendant is allegedly fraudulently joined (or where fraudulent joinder is alleged in a federal question case), the impediment to proper removal is not the plaintiff's joinder of that defendant but rather that defendant's lack of consent." <u>Id.</u> at *6. The defendants proffered evidence that the plaintiff selectively named Steel Grip in lawsuits, depending on whether the plaintiff needed its presence to avoid removal. Steel Grip offered evidence of its own reasons why it opposed removal. Applying a "clear and convincing evidence" standard, the court found the demonstration of collusion insufficient to repudiate Steel Grip's assertions as to why it did not want to consent to removal. <u>Id.</u> at *6. The court further concluded that there was a reasonable basis for predicting that the state court might impose liability on Steel Grip and thus ordered remand. <u>Id.</u> at *7-8.

In urging the court to adopt a collusion exception to the rule of unanimity in the present case, the Removing Respondents

_____

exception") against a diverse defendant who refuses to consent to removal. (Doc. 24 at 18 (emphases added).)

point to evidence that Petitioner League and Respondent OPBI are both controlled by Miles Wolff. (Doc. 24.) Further, they cite to evidence that after removal Mr. Wolff, holding this dual position, agreed on behalf of OPBI not to consent to removal during an OPBI board of directors meeting where counsel for the League was also present. (Doc. 9, Ex. 1.) In response, OPBI acknowledges that it adopted a corporate resolution refusing to consent but asserts that it did so because of its limited financial resources and its desire not to expend them litigating the propriety of removal. (Doc. 12 at 2.) While disappointed it lost its membership in the League, OPBI contends, it "does not in fact have any good faith basis on which to challenge the regularity or substance of the arbitration award." (Id.)

The Magistrate Judge did not address Hauck because it was not raised in the briefing before him.[7]  In light of the factual record, however, the court need not decide whether such a collusion exception should be applied in this case. As the Magistrate Judge correctly noted, OPBI's lease agreement expressly waived any conflict that might arise from Mr. Wolff's dual role. In particular, the lease provides:

> Waiver of Conflicts.  The Proposed Lessee [OPBI] and Manager [Rapidz Club] acknowledge that Miles Wolff, Commissioner of the League, and also owner of the

---

[7] Arguments not raised before the Magistrate Judge are properly raised by objection where the review is *de novo*.  United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992).

> Quebec Capitals, is the controlling shareholder of the
> Proposed Lessee and that this relationship may raise
> issues of conflict of interest. The Proposed Lessee
> and Manager knowingly and voluntarily waive any and
> all claims or issues that may exist or arise as a
> result of Mr. Wolff's representation of the League and
> dual ownership interests in the Proposed Lessee and
> Quebec Capitals.

(Doc. 20, Ex. 4.) Signatories to the lease agreement were OPBI, the League, Inside the Park, LLC, and Rapidz Club. (Id.) The Recommendation correctly identifies important economic reasons why the parties would have entered into this conflicts waiver, including the fact that the waiver permitted Miles Wolff to serve in this dual role to avoid the change in ownership clause in the stadium lease OPBI had with the City of Ottawa. (Doc. 21 at 9-11.)

A waiver is a voluntary and intentional relinquishment of a known right or benefit.[8] See Adder v. Holman & Moody, Inc., 288 N.C. 484, 492, 219 S.E.2d 190, 195 (1975). A party may waive rights in a contract if: (1) a right, advantage or benefit exists at the time of the waiver; (2) the waiving party has actual or constructive knowledge of the existence of the waiver; and (3) the party intends to relinquish the right, advantage, or benefit. Lewis v. Jones, 132 N.C. App. 368, 371, 512 S.E.2d 87, 90 (1999) (quoting Fetner v. Rocky Mount Marble & Granite Works,

---

[8] The lease agreement does not contain a choice of law provision but does contain a provision stating that it "shall be interpreted in accordance with the League Agreements." (Doc. 20, Ex. 4 at 11.) The League Affiliation Agreement states that it is governed by North Carolina law. (Doc. 1, Ex. 2.)

251 N.C. 296, 302, 111 S.E.2d 324, 328 (1959)). As signatories to the contract, the League, OPBI and Rapidz Club plainly agreed to "knowingly and voluntarily waive any and all claims or issues" that might arise as a result of Miles Wolff's dual role as the Commissioner of the League and as owner of OPBI. (Doc. 20, Ex. 4.) Thus, because the alleged collusion arises from this dual role, the waiver constitutes a barrier to any objection by OPBI and Rapidz Club as to OPBI's lack of consent.

Respondents Hall and O'Connor argue that they were not signatories to the lease and thus should not be bound by such a waiver. However, the League's pleading that instituted this action names these two Respondents solely in their representative capacities as Manager and Alternate Manager, respectively, of the Ottawa Rapidz baseball team.[9] (Doc. 2.) Both Hall and O'Connor represented the Ottawa Rapidz at the arbitration hearing. (Doc. 9, Ex. 2.) Because both individuals are sued in their representative capacities, therefore, their rights and liabilities in this action are derivative of the entity they represent, Ottawa Rapidz. In turn, the Ottawa Rapidz membership in the League is held by OPBI, a signatory to the lease agreement containing the conflicts waiver. The lease

---

[9] Hall was also a director of the Ottawa Rapidz as well as chairman of Rapidz Club. (Doc. 1, Ex. 1.) O'Connor was also an employee of Rapidz Club at the time it entered into the lease agreement. (Doc. 14, Ex. 2.)

agreement expressly states that OPBI and Rapidz Club executed the lease agreement for themselves and for all "Related Entities." (Doc. 20, Ex. 4.) "Related Entities" is defined in the League bylaws to be construed broadly to include "any ownership entity which owns, holds, controls, or manages an interest in an owner of a Member" as well as all its shareholders, officers, and directors, partners, and trusts, among others. (Doc. 14, Ex. 3 ¶ 2.2B.) Thus, as to the membership issues at stake here, OPBI acted on behalf of Ottawa Rapidz and its directors. Ottawa Rapidz is thus bound by the lease agreement, including the waiver of conflicts provision. Moreover, Rapidz Club, another signatory to the lease agreement, is wholly owned by Rapidz Sports & Entertainment, Inc., which is wholly owned by Momentus.ca, which in turn is wholly owned by Hall. (Doc. 1, Exs. 1, 2.) Thus, to the extent Hall and O'Connor are sued in their representative capacities of entities who directly or through other agents executed the lease agreement, the court finds it reasonable to conclude that for purposes of remand they had at least constructive knowledge of the waiver provision and intended to be bound by it.

Finally, Removing Respondents argue that Ottawa Rapidz was not a signatory to the waiver and cannot be bound by it. (Doc. 24.) As noted above, Ottawa Rapidz is a "Related Entity" under the lease agreement and is bound by the agreements of OPBI and

Rapidz Club therein. Moreover, under the lease agreement OPBI became the controlling entity of the Ottawa Rapidz membership, with the rights to all profits and losses of the membership, and Rapidz Club became the general manager responsible for conducting all business regarding the Ottawa Rapidz. (Doc. 20, Ex. 4.) Ottawa Rapidz is bound by any decision made by either OPBI, as the "Controlling Related Entity",[10] or Rapidz Club as the "Manager." (Id.) Put another way, two parties capable of making decisions for the Ottawa Rapidz – OPBI as the lease holder and Rapidz Club as team manager – executed the lease agreement that contained the conflicts waiver. Consequently, it is reasonable to find that the Ottawa Rapidz had at least constructive, if not actual, knowledge of the conflicts waiver and intended to be bound by it.

Therefore, even if collusion were recognized as a basis for defeating section 1446(a)'s unanimity requirement, the conflicts waiver precludes the Removing Respondents from being heard to complain of any hardship or unfairness as a result of Miles Wolff's dual role.

---

[10] The term "Controlling Related Entity" is a specific term within the League's bylaws. As noted above, the bylaws define a "related entity" as any "ownership entity which owns, holds, controls, or manages an interest in an owner of a member." (Doc. 14, Ex. 3 ¶ 2.2B.) A "controlling interest" is defined as "the ownership or voting control by any related entity that can determine the affairs of a member solely by its vote." (Id. at ¶ 2.7A(10).) The bylaws refer to a "Controlling Related Entity" whenever a related entity can determine the affairs of a member solely by its vote.

### 3. Realignment

The Removing Respondents finally argue in the alternative that the court should realign OPBI as a petitioner on the grounds that its interests are aligned with those of the League's based on Miles Wolff's interest in both entities. The Fourth Circuit has adopted the two-step "principal purpose" test to determine whether a party should be realigned. Ohio Cas. Ins. Co. v. RLI Ins. Co., No. 1:04CV483, 2005 WL 2574150, at *4 (M.D.N.C. Oct. 12, 1995). First, the court determines the primary issue in controversy; second, it assesses the parties' position on that issue and aligns them accordingly. Id. In other words, this test requires the court to undertake a specific examination of the "'collision of interests' from the 'principal purpose of the suit, and the primary and controlling matter in dispute' and to arrange the parties according to their sides in the dispute." See U.S. Fidelity & Guar. Co. v. A & S Mfg. Co., Inc., 48 F.3d 131, 133 (4th Cir. 1995) (quoting Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941)).

In their objections, the Removing Respondents recognize that the primary issue of the dispute to which the court is to look is whether to confirm an arbitration award that terminated OPBI's lease from the League. The Removing Respondents argue that OPBI's interests are aligned with those of the League's based on Miles Wolff's dual role. There are two problems with

16

this argument. First, to the extent OPBI's interests are aligned with those of the League, the parties anticipated, if not intended, this result and have waived any objection by virtue of the conflicts waiver, for the reasons noted above. Second, OPBI represents that it did not want its lease terminated but has reached the conclusion that it has no good faith basis on which to challenge the arbitration award. (Doc. 12 at 2.) If the League is ultimately successful, OPBI will lose its membership rights in the League, which demonstrates an actual harm. Simply because a party determines it lacks a good faith defense does not mandate that it be aligned on the outcome of the principal issue. Cf. Foster v. Carlin, 200 F.2d 943, 950-52 (4th Cir. 1952) (refusing to realign defendant who "remained neutral" and did not "participate actively" in the litigation).

Finally, the Removing Respondents point to OPBI's refusal to consent to removal as evidence that it is aligned with the League. (Id. at 3.) The principal issue is not the question of removal, however. Because OPBI deemed removal an endeavor unworthy of the effort, both economically and because it accepts litigating the arbitration award in state, not federal, court does not demonstrate agreement on the underlying, principal issue of OPBI's rights and duties under the lease.

17

In sum, Removing Respondents have not carried their burden of sustaining removal in this case.

**B.   Award of Justifiable Costs and Expenses**

The League moved for costs and expenses incurred in connection with the removal, which are recoverable within the discretion of the court. 28 U.S.C. § 1447(c); In re Lowe, 102 F.3d 731, 733 n.2 (4th Cir. 1996). Such an award is not made as a matter of course but rather where, absent unusual circumstances, "the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter." Id. at 140. Further, bad faith is not required to award fees. See In re Lowe, 102 F.3d at 733 n.2.

The Magistrate Judge found that the Removing Respondents "incorrectly applied the case law regarding removal and realignment" and "themselves created the conflict" now raised as grounds for removal, justifying the imposition of costs and expenses. (Doc. 21 at 15, 16.) The Removing Respondents argue that they advanced an objectively reasonable argument for

18

removal and should not be required to pay the League's costs and attorneys' fees.

The notice of removal was clear that the Removing Respondents were contesting the unanimity requirement as to OPBI. Case law in this district, Blue Mako, supports applying the nominal party exception to a diverse defendant to avoid the rule of unanimity. Further, at least one case, Hauck, which was not argued before the Magistrate Judge, considered an extension of the "collusion" exception to the rule of unanimity normally raised in federal question cases as a form of "fraudulent joinder" of a defendant who was diverse. Hauck, 2006 WL 2927559, at *5-6. Thus, the court cannot say that the Removing Respondents lacked at least colorable legal grounds for their removal, even though they blended their arguments with citations to traditional "fraudulent joinder" cases that did not directly stand for these propositions. (See, e.g., Doc. 1 at ¶ 15, Doc. 24 at 18).

At the end of the day, the removal falls short because of factual bars; namely, OPBI's role as a party against whom the court finds that a claim is at least "possible" and the conflict waiver provision. In advancing their arguments before the Magistrate Judge, the Removing Respondents failed to acknowledge key documentation of which they were plainly aware and which linked both OPBI to the League's claim and the Removing

19

Respondents to the waiver of conflicts. The Removing Respondents also grounded their arguments that OPBI could not be the basis of any liability on a representation that OPBI had assigned all its transferable assets to Rapidz Club – a fact which was incorrect (at least by omission) insofar as OPBI *retained* the membership at issue in this case.

Before this court, however, the Removing Respondents advanced additional legal grounds, citing Hauck, and argued they should not be bound by the conflicts waiver as non-signatories. A legal argument that is supported by a limited basis of authority and is at least colorable is likely objectively reasonable. Parker, 104 F. Supp. 2d at 585 (finding defendant's "novel argument" for removal which was "supported by a limited basis of authority" objectively reasonable since it was "at least colorable"). Thus, the court finds that the Removing Defendants had at least *a* colorable argument in support of the removal and, pursuant to the court's discretionary authority, the League's request for justifiable costs and expenses in connection with the remand motion will be denied.

## III. CONCLUSION

The court has reviewed those portions of the Recommendation to which the Removing Respondents have objected and has made a *de novo* determination. After careful review, the court finds that the objections do not change the recommendation to remand

20

the case but that the award of justifiable costs and expenses should be denied. Accordingly, the Recommendation is adopted in part and rejected in part, as further explained herein.

IT IS THEREFORE ORDERED that the Magistrate Judge's Recommendation is affirmed as to the recommendation to remand the case, but for the reasons stated herein to the extent they differ from those in the Recommendation;

IT IS FURTEHR ORDERED that the League's request for an award of justifiable costs and expenses is DENIED;

IT IS FURTHER ORDERED that the motions of the League and OPBI to remand (Docs. 9, 12) are GRANTED and that this action is remanded to the General Court of Justice, Superior Court Division, of Forsyth County, North Carolina. The motions to dismiss by Respondents Hall, O'Connor and Ottawa Rapidz (Docs. 13, 15) are not reached insofar as the court lacks jurisdiction to do so.


                                        /s/    Thomas D. Schroeder
                                        United States District Judge

February 18, 2010